Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3428 (02 B 49672) | **DATE** | 9/8/2003 |
| **CASE TITLE** | Matrix asset Management Corp. Vs. Conseco Financing Servicing Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the foregoing reasons, the order of the bankruptcy court is hereby affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 0 9 2003 | |
| | Notified counsel by telephone. | | date docketed | 6 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 SEP -9 PM 1:56 | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
|    CONSECO, INC., et al., ) | No. 03 C 3428 | |
|              Debtors, ) | (Appeal from 02 B 49672) | |
| ) | | |
| MATRIX ASSET MANAGEMENT ) | | |
| CORPORATION, ) | SEP 0 9 2003 | |
| ) | | |
|        Appellant, ) | | |
| ) | | |
| vs. ) | Adversary No. 03 C 671 | |
| ) | | |
| CONSECO FINANCING SERVICING CORP., ) | | |
| ) | | |
|        Appellee. ) | | |

## MEMORANDUM OPINION AND ORDER

Appellant Matrix Asset Management (Matrix) filed an adversarial complaint as part of the Chapter 11 bankruptcy proceeding of appellee Conseco Finance Servicing Corporation (CFSC), seeking reimbursement of certain expenditures. The Bankruptcy Court for the Northern District of Illinois, Judge Carol A. Doyle, ruled in favor of CFSC and against Matrix, holding that Matrix was not entitled to the funds but only to a claim against the bankruptcy estate. Matrix now appeals that order, arguing that CFSC was acting solely as an agent of certain trusts and that therefore the money was not part of the bankruptcy estate. For the following reasons, the order of the bankruptcy court is affirmed.

## BACKGROUND

CFSC is in the business of making loans secured by mortgages on real property. These loans are subsequently sold to securitization trusts pursuant to individual pooling and servicing agreements, all of which have essentially the same terms. The trusts then issue and



sell shares of ownership interest in the trusts to third party investors. Pursuant to the polling servicing agreements CFSC has "the sole obligation to manage, administer, service and make collections" on the loans. In order to facilitate this duty, CFSC holds legal title to the loans but has no equitable interest. All money collected by CFSC with respect to the loans is paid to the trusts which, in return, pay fees to CFSC and reimburse it for its costs associated with servicing the loans.

As part of its duty to service the loans, CFSC reached an agreement with Matrix whereby Matrix would perform property management services for CFSC. In exchange, Matrix is paid servicing fees and is reimbursed for its costs. The contract calls for Matrix to be reimbursed whenever an asset sale closes or whenever Matrix's expenditures in relation to a specific asset exceed $5,000.

Section 2.9 of the agreement between Matrix and CFSC provides:

<u>Payment Terms</u>: Matrix shall remit to Conseco Finance [CFSC] all Net Proceeds from the sale or disposition of an Asset or Special Asset on the Remittance Date. All authorized fees and Direct Expenses advanced by Matrix and not previously paid by Conseco Finance shall be included on the Settlement Statement and paid from Seller's Funds at closing of that Asset or Special Asset.

Net Proceeds are defined as:

The Amount received from the sale, settlement or disposition of an Asset after deduction of expenses related to closing. (i.e., all Direct expenses if any shall be netted from Conseco Finance remittance)

Matrix and CFSC agreed on a procedure, not required by the contract, whereby Matrix collected its fees and expenditures from escrow immediately upon the closing of each asset. The remaining balance was paid from escrow to CFSC, which, presumably, passed the funds on to the trusts as required by the polling and servicing agreements.

On December 17, 2002, when appellee filed its bankruptcy petition under Chapter 11, Matrix had advanced approximately $581,773.48, relating to assets that had not yet been sold. CFSC refused to allow Matrix to collect its expenses at closing and instead insisted that Matrix would be paid from CFSC's assets. This left Matrix with only a claim in bankruptcy for the funds it had advanced.

On March 6, 2003, appellant filed its complaint in the bankruptcy court, seeking a declaration that the pre-petition expenditures by Matrix were not part of the bankruptcy estate and that CFSC could not therefore interfere in Matrix's collection. The case was tried on stipulation and on April 29, 2003, in open court, the bankruptcy judge ruled against Matrix and for CFSC.

## STANDARD OF REVIEW

All facts relating to this matter were stipulated to by the parties. In determining whether CFSC was acting as an agent of the trusts, and whether the expenditures were part of the bankruptcy estate, the bankruptcy court essentially applied the law to these stipulated facts and reached its conclusions. We review these mixed conclusions for clear error. McFarlane v. Life Ins. Co. of North America, 999 F.2d 266, 277 (7th Cir. 1993). To the extent that we are reviewing the court's statements of law, we do so *de novo*. In re Marrs-Winn Co., Inc., 103 F.3d 584, 589 (7th Cir. 1996).

## DISCUSSION

It is well settled that an agent, acting under actual authority, has the power to enter into a binding contract on behalf of an undisclosed principal. *See* Indiana Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314, 319 (7th Cir. 1998). The facts clearly show that CFSC was the servicing

agent of the trusts and had the power to enter into binding contracts for the trust. There is however no indication that it entered into any such contract with Matrix. The property management agreement was nothing more than a two-party contract between CFSC and Matrix, whereby Matrix agreed to perform work in exchange for payments from CFSC. The contract clearly mentions only CFSC and Matrix as parties, and CFSC alone has the duty to pay Matrix for its services. Nowhere does the contract contemplate any third party.

The agreement between CFSC and Matrix states that Matrix will be paid from the "Sellers" funds. Matrix argues that the trusts must be the sellers contemplated by the agreement because they are the actual owners of the loans and because CFSC has no equitable interest in the loans. CFSC however retained legal title to the loans for just this purpose. CFSC has the power to service and sell the loans in order to maximize value and therefore needed to retain title to the loans. Accordingly, CFSC is the seller of each asset and has the contractual duty to pay Matrix its fees and reimburse it for its expenditures. Section 541 of the bankruptcy code envisions just this scenario, providing that if a debtor holds legal title to legal property but has no equitable interest, such property belongs to the estate "only to the extent of the debtor's legal title." 11 U.S.C. § 541(d). In other words, to the extent that CFSC retained legal title in order to facilitate its servicing of the loans, this property is considered part of the estate.

Let us characterize the relationships in a somewhat different way. CFSC was the servicing agent for the trusts and had the contractual obligation to make collections on the loans. It could have done so itself and, indeed, had legal title for that purpose. If it had self-performed it would have been obligated to pay over the proceeds to the trusts, which had

equitable title, and then be paid by the trusts its fees and expenses. CFSC chose, however, to contract with others, such as Matrix, to perform certain of those obligations. The trusts were not parties to the arrangement between CFSC and Matrix; their relationship was with CFSC and they would have no interest in how CFSC performed its obligations so long as they were performed. That is, the trusts had no more interest in the CFSC-Matrix relationship than they did in CFSC's relationship with its landlord or its telephone service provider. Matrix was entitled to look to the assets of CFSC for reimbursement, and it was not entitled to look to the assets of the trusts, at least so long as the trusts paid to CFSC the fees and expenses it was obligated to pay as a result of its agreement with CFSC. No one is contending that those payments were not made – at which time they became property of the estate.

We do not need to address the second issue raised by the appellant – whether the actual proceeds of the sales are part of CFSC's bankruptcy estate or whether they belong to the trusts. In either case, Matrix's claim for reimbursement is against CFSC, the only party with which it had a contractual relationship. As it stands now, that claim is against the bankruptcy estate of CFSC.

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is hereby affirmed.

JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 8, 2003.